The Honorable Jack McCoy State Representative 712 McNeil Street Malvern, Arkansas 72104
Dear Representative McCoy:
This is in response to your request for an opinion regarding the Peer Review documents currently in use by the Arkansas Chiropractic Association Insurance and Peer Review Committee. You have asked for an opinion with respect to the legality of this procedure, as well as the enforceability of language concerning the immunity of the Association and Insurance Relations Committee.
Peer review was addressed by the U.S. Supreme Court in Union Life Insurance Co. v. Pireno, 458 U.S. 119 (1982), a case involving an attack on the procedure based upon federal antitrust law. The Court ruled that peer review arrangements "may prove contrary to both the spirit as well as letter of the antitrust laws, because they have potential to restrain competition in a non-insurance (i.e. chiropractic) market." 458 U.S. at 133. It therefore, seems clear that the procedure reflected in your correspondence will fail to withstand an attack based upon antitrust law.
You have also asked whether the language concerning immunity is enforceable. As a general rule, arbitrators are clothed with a judicial form of immunity in the performance of their duties. 6 C.J.S. Arbitration 74. The question does arise, however, whether the peer review procedure embodied in these documents actually constitutes "arbitration." It has been stated that there can be no valid arbitration without an agreement between the parties to be bound by the decision. 6 C.J.S. Arbitration 7. It appears in this instance that the procedure is purely advisory, preventing it from truly qualifying as "arbitration." Judicial immunity may therefore not extend to the mediators under these circumstances; and the question then arises whether the contractual provision involving immunity is enforceable.
To the extent the parties have mutually assented to hold the Committee and the Association harmless, it appears that such a contractual provision would be enforceable. Except insofar as public interests or those of a third party are involved, contract provisions not to sue are valid. 17 C.J.S. Contracts 231. Of course, this contractual provision will not effectively limit any rights of third parties who are not signatories to the contract.
You should be aware, however, of the potential challenges to this agreement. A challenge could be premised upon federal antitrust law, as previously noted. It is my opinion that the provision in question may not withstand a claim for damages based upon this body of law. It may be successfully argued, based upon antitrust provisions, that such an agreement affects the due course of justice and is not limited to the adjustment of private rights. The provision would, in that event, be avoid. 17 C.J.S. Contracts 223.
It is also conceivable that a challenge could be premised upon the doctrine of economic duress or business compulsion. Such a challenge would be viewed in light of the particular facts involved, including the relative bargaining positions of the parties viewed in the framework of contemporary business practices and commercial life. 17 C.J.S Contracts 177; Hunter v. Texas Instruments, Inc., 798 F.2d 299 (8th Cir. 1986). This doctrine would only apply in the event unjustified coercion was somehow used to induce the contract. 17 C.J.S., supra. One might argue that a successful challenge must be based upon the particular facts and circumstances surrounding each agreement since the proceeding itself is valid as commercially reasonable under current business practices. However, the aforementioned antitrust implications must also be considered in this regard as a potential basis for challenging the commercial reasonableness of the peer review procedure.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.